UNITED STATES DISTRICT COURT
EASTERN DSTRICT OF NEW YORK
------------------------------------------------------------------------ x

BELENDE THELISMOND,

                Plaintiff,

            -against-

CITY OF NEW YORK; CORRECTIONS OFFICER TEINO SMITH, CORRECTIONS OFFICER "JOHN" GAGEDEEN and CORRECTIONS OFFICERS JOHN and JANE DOE 1 through 10, individually and in their official capacities (the names John and Jane Doe being fictitious, as the true names are presently unknown),

                Defendants.

------------------------------------------------------------------------ x

**COMPLAINT**

Jury Trial Demanded

      Plaintiff BELENDE THELISMOND by his attorney, Robert Marinelli, complaining of the defendants, respectfully alleges as follows:

## NATURE OF THE ACTION

      1.    Plaintiff brings this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of his civil rights, by defendants The City of New York ("City"), New York City Correction Officer Teino Smith ("Smith"), Correction Officer John Gagedeen ("Gagedeen") and "JOHN and JANE DOE" #1-10, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## JURISDICTION AND VENUE

      2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), as the incidents alleged herein occurred in this district.

5. This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. At all times hereinafter mentioned, plaintiff BELENDE THELISMOND ("Plaintiff") was in custody of the New York City Department of Corrections ("DOC") in East Elmhurst, NY. Plaintiff was a pre-trial detainee at the Anna M. Kross Center on Rikers Island, in the jurisdiction of the County of Queens, State of New York.

8. At all times hereinafter mentioned, defendants Correction Officers Smith, Gagedeen and John and Jane Doe #1-10 (collectively "Doe Defendants") were correction officers, employees and agents of the CITY, acting within the scope of their employment and under color of state law, whose names and identities are not currently known to plaintiff. The Defendants are sued in their individual capacities.

9. At all times hereinafter mentioned, defendant City was a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York. Defendant City, acting through the DOC, was responsible for the policy, practice, supervision, implementation, training, supervision, discipline and retention, and conduct of all DOC personnel. In addition, at all times relevant, Defendant City was responsible for enforcing the

rules of the DOC, and for ensuring that the DOC personnel obey the laws of the United States and the State of New York.

10. At all times hereinafter mentioned defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11. Each and all of the acts of the Defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12. Each and all of the acts of the Defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## STATEMENT OF FACTS

### The April 28, 2015 Assault of Plaintiff

13. On April 28, 2015, plaintiff was in DOC custody at AMKC, a facility in the Rikers Island Jail Complex in East Elmhurst Queens.

14. At approximately 10:10 p.m. plaintiff, was among a group of inmates waiting to receive their medication.

15. Smith was the officer assigned to accompany these inmates to the medication window. Gagedeen, was responsible for ensuring the inmates took their medication.

16. Approximately twelve inmates were present to receive their medication.

17. Shortly after arriving at the window where medication was dispensed, Smith and one of the inmates exchanged "words".

18. Plaintiff, along with three other inmates approached Smith and this inmate.

19. As plaintiff walked away from the medication window, he was followed by Smith and Gagedeen.

20. Smith approached plaintiff and begins an argument.

21. Plaintiff, who uses a cane to walk, gestures to Smith as Smith approaches him.

22. After initially walking toward Smith, plaintiff takes approximately five steps backwards.

23. Smith removes his Extraction of Oleoresin Capsicum Spray ("OC" or "Pepper Spray"), extends his arm and spray the OC spray directly in plaintiff's face.

24. After being sprayed, plaintiff drops his cane and pushes Smith's arm away.

25. Smith again sprays plaintiff with OC, resulting in plaintiff dropping his cane and falling to the floor. Plaintiff then covers his face with his hand.

26. As Smith approaches plaintiff, plaintiff strikes Smith with his hands.

27. Smith walks towards plaintiff, who punches Smith on the right side of his face.

28. In response, Smith takes a boxer's stance and throws over 20 jabs and uppercuts primarily striking plaintiff's head, including his back and facial area.

29. While being punched, plaintiff flails his arms at Smith, covers his head with both arms and backs away.

30. As a result of Smith's actions plaintiff experienced swelling to various areas of his face.

31. The other corrections officers, including Gangedeen, stood by idly and did nothing to prevent this attack.

32. This incident was recorded by various video cameras.

33. The New York City Office of Administrative Trials and Hearings ("OATH") conducted an investigation and held a hearing.

34. At the conclusion of this hearing, OATH ruled that Smith had used excessive

force against plaintiff.

35. As a result of this finding, as well as a separate finding that plaintiff had been disrespectful, insubordinate and threatening a supervising officer, Smith was suspended without pay for forty-five days.

### A History of Violence In New York City Jails

36. For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous, and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail New York City Department of Correction.[1]

37. For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed abuse of prisoners and cover-ups sufficiently serious to merit criminal prosecution.

38. *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the pervasive practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from prisoners who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice, and supervision of agency staff and investigators, and changes in the Department's use of force policy.

---

[1] *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) [Correction Institution for Men]; *Jackson v. Montemagno*, CV 85-2384 (AS) (E.D.N.Y.) [Brooklyn House of Detention]; *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) [Bellevue Prison Psychiatric Ward]; *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) [Central Punitive Segregation Unit].

39. In fact, since 2002, senior supervisors and uniformed staff in the DOC have been sued repeatedly by inmates alleging staff beatings. Many of these cases, all resulting in favorable judgments for plaintiffs following settlement, include remarkably similar allegations of misconduct. See, e.g.,

- Reynolds v. City of New York, No. 11 Civ. 621 (S.D.N.Y.) (alleging beat-up in George Motchan Detention Center ("GMDC") resulting in shoulder fracture and loss of consciousness; settled for $200,500);

- Doe v. City of New York, No. 15 Civ. 3849 (S.D.N.Y.) (alleging repeated assaults and rapes perpetrated by a guard on two incarcerated women; settled for $1,200,000);

- Norwick v. City of New York, No. 15 Civ. 4612 (S.D.N.Y.) (alleging beat-up of a seventy-six year old woman resulting in two broken arms; settled for $249,000);

- Reynolds v. City of New York, No. 11 Civ. 621 (S.D.N.Y.) (alleging beat-up in George Motchan Detention Center ("GMDC") resulting in shoulder fracture and loss of consciousness; settled for $200,500);

- Reynolds v. City of New York, No. 11 Civ. 621 (S.D.N.Y.) (alleging beat-up in George Motchan Detention Center ("GMDC") resulting in shoulder fracture and loss of consciousness; settled for $200,500);

- Mull v. City of New York, No. 08 Civ. 8854 (S.D.N.Y.) (alleging beat-up in AMKC resulting in diffuse axonal injury to brain, partial loss of eyesight, and partial loss of hearing, and requiring the victim to take seizure medications; settled for $550,000);

- Belvett v. City of New York, No. 09 Civ. 8090 (S.D.N.Y.) (alleging beat-ups at GMDC and Robert N. Davoren Center ("RNDC") resulting in facial fracture;  settled for $350,000);

- Youngblood v. Baldwin, No. 08 Civ. 5982 (S.D.N.Y.) (alleging beat-up at GRVC resulting in skull laceration and broken nose; settled for $240,000);

- Williams v. City of New York, No. 07 Civ. 11055 (S.D.N.Y.) (alleging beat-up in Otis Bantum Correctional Center ("OBCC") resulting in fractured jaw and facial bones and torn earlobe; settled for $202,500);

- Williams v. City of New York, No. 09 Civ. 5734 (S.D.N.Y.) (alleging beat-up in RNDC resulting in laceration to head; settled for $87,500);

- Lee v. Perez, No. 09 Civ. 3134 (S.D.N.Y.) (alleging beat-up at North Infirmary Command ("NIC") resulting in multiple rib fractures, a spinal fracture and a collapsed lung; settled for $300,000);

- Shuford v. City of New York, No. 09 Civ. 945 (S.D.N.Y.) (alleging two beat-ups at RNDC resulting in facial fractures; settled for $375,000);

- Diaz v. City of New York, No. 08 Civ. 4391 (S.D.N.Y.) (alleging beat-ups involving two inmates, one at AMKC and one at OBCC; settled for $400,000 and $450,000, respectively);

- Lugo v. City of New York, No. 08 Civ. 2931 (S.D.N.Y.) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

- Cuadrado v. City of New York, No. 07 Civ. 1447 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung; settled for $175,000);

- Scott v. City of New York, No. 07 Civ. 3691 (S.D.N.Y.) (alleging beat-up at GMDC resulting in orbital fracture; settled for $175,000);

- Pischeottola v. City of New York, No. 06 Civ. 2505 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung requiring chest tube; settled for $150,000);

- Rice v. N.Y.C. D.O.C., No. 03 Civ. 582 (S.D.N.Y.) (alleging beat-ups of two inmates at GRVC resulting in collapsed lung and contusion hematomas in one case, and in neck and spinal cord injuries causing permanent stutter in the other; settled for $255,000 and $590,000, respectively);

- Joseph v. N.Y.C. D.O.C., No. 02 Civ. 9219 (S.D.N.Y.) (alleging beat-up at GRVC resulting in orbital fracture; settled for $375,000).

40. Additionally, through DOC's elaborate reporting system, defendants were aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force by DOC staff members resulting in serious injuries to inmates but failed to take sufficient steps to curb these abuses.

41. As of the time Mr. Thelismonde was beaten, the Defendants were aware of the unwillingness of the Department to investigate adequately and impose meaningful discipline against DOC staff members who use unnecessary and excessive force on prisoners, or who fail to accurately and honestly report it.

42. Through all these cases and Department reports, DOC and its supervisors have been made aware of the widespread practice by DOC staff members of using excessive and/or unnecessary force to injure, and not restrain, inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the *de facto* refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform and protect the safety of prisoners confined in DOC custody.

43. The Department and the Defendants cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure

of the Department to take sufficient measures to investigate and discipline this abuse.

44. The Department has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983/Fourth, Fifth and Fourteenth Amendments**
**(Against All Individual Defendants)**

45. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

46. By reason of the foregoing, and by assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, failing to prevent other defendants from doing so, or failing to provide necessary medical care, or causing an unlawful seizure and extended detention without due process, the Individual Defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution to be free from gratuitous and excessive force and unlawful seizure and detention.

47. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

48. As a direct and proximate result of the misconduct and abuse of authority detailed

above, plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM
### Failure to Intervene

49. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

50. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

51. Accordingly, the defendants who failed to intervene violated the First, Fourth, Fifth and Fourteenth Amendments.

52. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## THIRD CLAIM
### Monell Claim

53. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

54. Defendant City, through DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of plaintiff's beatings. This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice, or custom and led to plaintiff's assault.

55. By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which plaintiff was subjected to brutal beatings and untimely medical care, defendant City has deprived plaintiff of rights, remedies, privileges, and

immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourteenth Amendment to be free from gratuitous and excessive force.

56. As a direct and proximate result of the policy, practice, and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

1. **PRAYERS FOR RELIEF**

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the Individual Defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

DATED:   April 23, 2018
         New York, New York

                                             /ss/
                            Robert Marinelli
                            305 Broadway, Suite 1001
                            New York, New York 10007
                            (212) 822-1427
                            robmarinelli.gmail.com